IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FRANK TAYLOR, #R-29532,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 10-cv-967-GPM |
| ) | |
| **JOHN GUTHURTER,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiff Frank Taylor, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving an 18 year sentence for attempt aggravated criminal sexual assault, 5 years for aggravated battery, and 3 years for aggravated battery on a peace officer. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under § 1915A and dismiss this action.

Initially, the Court notes that Plaintiff failed to disclose three of his previously-filed lawsuits in his complaint. One of the omitted cases was a "strike," *Taylor v. Mangram*, No. 03-cv-50131 (N.D. Ill.), which was dismissed April 22, 2003, for failure to state a claim upon which relief may be granted. This omission alone would be grounds for dismissal of the instant complaint. The Court relies on a party's litigation history listed in his or her complaint to adhere to the three-strike requirement of 28 U.S.C. § 1915(g), and thus there is a need for reliable information about prior litigation. As a result, where a party fails to provide accurate litigation history, the Court may appropriately dismiss the action for providing fraudulent information to the Court. *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (dismissal appropriate where

Court-issued complaint form clearly warned Plaintiff that failure to provide litigation history would result in dismissal). In this case, however, the Court finds it more appropriate to address the merits of the complaint.

**The Complaint**

The events leading up to Plaintiff's complaint began in the Shawnee Correctional Center, where Plaintiff was issued a disciplinary ticket on October 14, 2010, after a confrontation with prison staff in the food service area. According to the disciplinary report, a correctional officer saw Plaintiff throw some food from his tray back into the serving line. He told Plaintiff to pick up the food, Plaintiff refused, and a verbal altercation ensued. The officer told Plaintiff to leave the area, after which Plaintiff hit the officer in the head with a food tray (Doc. 1, p. 12). Another responding officer sprayed Plaintiff in the face with two bursts of pepper spray after he refused to cuff up (Doc. 1, p. 11).

Plaintiff was apparently transferred to Menard Correctional Center on the same day after this incident. Plaintiff's primary claim is that Defendant Guthurter, a guard at Menard, threatened Plaintiff's life, "terrorizing" Plaintiff while he was in restraints in his cell.

Plaintiff's disciplinary hearing over the food service incident took place at Menard after Plaintiff's transfer. Plaintiff claims he requested staff assistance and extra time to prepare his defense, but was denied both. He asserts that this denial violated his right to due process. At the hearing, Plaintiff admitted throwing food on the officer, but denied hitting the officer with his tray (Doc. 1, p. 9). Discipline was imposed on Plaintiff, consisting of 9 months segregation, C grade, and commissary restriction; 6 months contact visit restriction; and revocation of 2 months of good conduct credit (Doc. 1, p. 9).

Plaintiff also claims that the conditions of his confinement violate his rights in several ways. He was denied a shower for eight days after being sprayed with pepper spray. His prescribed medications were taken away after his transfer from Shawnee Correctional Center. He suffered sleep deprivation. In his cell, which has poor air circulation, he has been exposed to rust particles, sewage fumes, asbestos, lead paint, and excessive cold. In addition, he complains that he was not given cleaning supplies, a towel, washcloth, or bed linens; and that his cellmate's psychological condition has caused "problems of uncleanliness" in their cell.

Plaintiff seeks compensatory and punitive damages against Defendant Guthurter, the expungement of his disciplinary report, and a transfer to another institution. Plaintiff filed a motion for preliminary injunction (Doc. 5) along with his complaint, reiterating his transfer request. On December 8, 2010, Plaintiff filed a motion for a temporary restraining order (Doc. 9), requesting an order that Defendant Guthurter stay at least 200 feet away from Plaintiff because of his continued intimidation. Plaintiff has also requested that venue for this case be changed to the Central District of Illinois (Doc. 12).

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into four (4) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Death Threat**

The death threat from Defendant Guthurter occurred on October 14, 2010, the same day as the incident between Plaintiff and another correctional officer in the food line at Shawnee

Correctional Center. After Plaintiff was transferred to Menard, Defendant Guthurter "breached security" by entering Plaintiff's cell while Plaintiff was in restraints. Defendant Guthurter then told Plaintiff, "If you try that shit you pulled down at Shawnee Correctional Center, you will come up missing here" (Doc. 1, p. 6). Plaintiff claims that as a result of this encounter, he has post-traumatic stress and is scared to eat his food on Defendant Guthurter's shift. In addition, the stress has caused his chronic hepatitis C to worsen, and caused him gastrointestinal problems.

In his motion for preliminary injunction (Doc. 5), Plaintiff states that Defendant Guthurter shook down Plaintiff's cell on November 12, 2010, while Plaintiff was in the shower. Plaintiff returned to find his legal papers strewn about, food spilled on his bed, clothing and personal hygiene items all over the bed, and his "seg" pen was missing. Plaintiff attached to his motion the grievance he filed on November 14, 2010, over this shakedown and the other events raised in Plaintiff's complaint (Doc. 5, p. 3).

Plaintiff's December 8, 2010, motion for temporary restraining order (Doc. 9) adds that Defendant Guthurter "appeared at Plaintiff's door on Dec. 2 at chow-time and Dec. 3, at shower time. Plaintiff could not eat Dec. 2 and could not take at [sic] shower Dec. 3, due to fear and intimidation" (Doc. 9, p. 1).

In some circumstances, a threat may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corrections*, 574 F.3d 443, 445 (7th Cir. 2009); *see, e.g., Irving v. Dormire*, 519 F.3d 442, 445, 449-50 (8th Cir. 2008) (pattern of conduct by defendant including allowing another inmate to attack plaintiff, offering to pay other inmates to beat him, providing a weapon to an inmate to use against plaintiff, and labeling plaintiff a "snitch," coupled with

repeated verbal death threats, stated a claim); *Northington v. Jackson*, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (prisoner's allegation that correctional officer put a gun to his head and threatened to shoot him stated Eighth Amendment claim); *Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir. 1986) (defendant pointed gun at plaintiff, cocked it and threatened to shoot). However, an "idle and laughing threat," or verbal harassment alone, will not give rise to a constitutional claim. *See Northington*, 973 F.2d at 1524; *Dobbey*, 574 F.3d at 446 (brief display of noose by white guard during a card game in officers' control room, in view of African-American plaintiff, was not a credible threat to kill or injure plaintiff).

Courts must apply an objective standard to determine whether a particular threat, given all the circumstances, may amount to a constitutional violation. *Dobbey*, 574 F.3d at 445. The pertinent inquiry is whether a "reasonable" victim would fear for his or her life as a result of the threat; not whether this plaintiff experienced actual fear. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)).

In the instant case, Plaintiff describes a single verbal threat by Defendant Guthurter, that Plaintiff "will come up missing" if he repeats the behavior that landed Plaintiff in segregation (allegedly hitting a guard with a food tray). There is no allegation that any defendant brandished or threatened to use a weapon against Plaintiff. Furthermore, Defendant Guthurter did not repeat his threat. Although Plaintiff claims Defendant Guthurter engaged in "persistence [sic] intimidation," the only action Plaintiff describes is that this defendant "appeared at plaintiff's door" on two occasions, and conducted a shakedown of Plaintiff's cell on another day. However, Plaintiff does not claim that Defendant Guthurter made any other threatening

statements or actions (Doc. 9, p. 1). It is to be expected that Plaintiff will encounter any correctional officer assigned to his housing unit on a regular basis. In addition, the shakedown of a segregation cell is a routine occurrence, and Plaintiff does not claim to have been singled out for unusual treatment, let alone threatened again. These events do not constitute a continued threat or intimidation of constitutional dimension.

Although Plaintiff claims Defendant Guthurter's threat put him in fear of his life and has caused him physical distress, the Court concludes that this isolated verbal threat, unaccompanied by any other indicia of violence, is not sufficient to cause a reasonable plaintiff the level of fear that would constitute cruel and unusual punishment.

Plaintiff also characterizes Defendant Guthurter's threat that Plaintiff "will come up missing" as "retaliatory." However, "not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir. 1987); *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985) ("alleging merely the ultimate fact of retaliation is insufficient")).

In Plaintiff's case, while he labels the threat as "retaliatory," his complaint is devoid of any allegations that could be construed to make out a constitutional claim of retaliation. First, Plaintiff did not engage in any protected action (e.g., filing a grievance, exercising his right to free speech, complaining about prison conditions) prior to receiving the threat from Defendant Guthurter. Because there had been no chronology of earlier protected activity on the part of Plaintiff, it follows that there could not have been any "retaliation" designed to punish Plaintiff

for pursuing a grievance or complaint. Plaintiff has failed to state a retaliation claim. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (naming the protected activity and the act of retaliation is all that is necessary to state a claim of improper retaliation).

For these reasons, Plaintiff fails to state a claim upon which relief may be granted, and Count 1 will be dismissed with prejudice.

**Count 2 - Due Process**

Plaintiff claims that the revocation of two months of his good conduct credit created an atypical hardship by affecting the length of his sentence without due process. He alleges he was deprived of due process by the defendants' refusal to provide him with assistance or additional time to prepare his defense before facing the adjustment committee. The relevant Defendants are Ashby and Lee, who made up the adjustment committee, and Rednour, the warden at Menard.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution nor correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Plaintiff has included copies of the disciplinary reports that were prepared on October 14, 2010, (the date of the incident) as well as the final report of the adjustment committee (Doc. 1, p. 9-12). His hearing was held on October 18, 2010. Plaintiff complains that the nearly four-day interval was not enough time to prepare, but this period is far longer than the 24 hour minimum

in *Wolff*. As to the other *Wolff* requirements, Plaintiff alleges only that he was not allowed to call witnesses (Doc. 5, p. 4). However, Plaintiff does not state who he planned to call as a witness or whether he requested permission to have any witness participate in the hearing. Institutional safety and correctional goals may well have precluded the participation of any potential witnesses housed in Shawnee Correctional Center, given that the hearing was held in Menard Correctional Center. However, more to the point, Plaintiff admitted in the hearing that he threw food on a correctional officer. This admission alone meets the requirement that the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). As long as the decision of the hearing board has some factual basis, this standard has been met. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Plaintiff, therefore, has failed to state a claim under § 1983 for violation of his procedural due process rights in the disciplinary hearing.

A loss of good conduct credit does implicate a liberty interest because such a loss potentially affects the length of Plaintiff's sentence, as he has pointed out. However, a prisoner cannot seek damages for the loss of good conduct credits, or the restoration of his good time, in a § 1983 action. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994). The exclusive method for challenging the revocation of good time credit is habeas corpus, but a federal habeas petition may only be commenced after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck*, 512 U.S. at 480-81. The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)). The State of Illinois must first be

afforded an opportunity, in a mandamus action pursuant to 735 ILL. COMP. STAT. 5/14-101 *et seq*., to consider the merits of Plaintiff's claim. Accordingly, Plaintiff's claim for restoration of his good conduct credit is dismissed without prejudice. Only after Plaintiff exhausts state court remedies would he be able to bring this action in a properly filed federal habeas action.

**Count 3 - Deliberate Indifference/Denial of Medications**

Plaintiff alleges that his prescription medications were taken away after the altercation at Shawnee Correctional Center and his subsequent transfer to Menard. Plaintiff suffers from hepatitis C, a chronic illness.

In order to establish deliberate indifference, a plaintiff must first show that his medical need was serious, and then must show that "a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008). The Court will presume that Plaintiff's hepatitis C is a serious medical condition. However, the complaint contains no allegations that might state a claim that Plaintiff's medication was knowingly withheld. He has not stated what medication(s) were denied, for how long, or whether he suffered any injury, physical distress, or worsening of his condition as a result. Nor does he identify any particular Defendant who was responsible for the alleged deprivation.

The Seventh Circuit's decisions elucidating the standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). This Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is

insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth,* 532 F.3d at 679; *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Nothing in Plaintiff's complaint indicates that the lack of access to his medication was anything other than negligent, or a possible temporary consequence of his abrupt transfer to a new institution.

Plaintiff has failed to state a claim for deliberate indifference, thus Count 3 must be dismissed with prejudice.

**Count 4 - Hygiene/Cell Conditions**

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). The objective component of a conditions claim focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*,

867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

The most specific of Plaintiff's allegations of inhumane conditions is that he was not permitted to shower for eight days after being subjected to pepper spray. The disciplinary report states Plaintiff was sprayed in the facial area (Doc. 1, p. 11). This may certainly have caused Plaintiff discomfort, but he states no further facts to support a claim of constitutional dimension. He does not allege that his cell was without running water or that he lacked any means to clean himself of the pepper spray.

There is no clear standard as to the minimum frequency of showers an inmate must be allowed in a particular period of time. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (one shower per week for inmates in segregation is constitutionally sufficient). Thus, having to wait eight days for a shower, absent extraordinary circumstances, is a short term, temporary deprivation that does not rise to the level of a constitutional violation. *See Harris v. Fleming*, 839 F.2d 1232, (7th Cir. 1988) (deprivation of toilet paper for 5 days, and deprivation of soap, toothbrush, and toothpaste for 10 days, was a temporary, isolated incident due to negligence of defendants, and did not violate prisoner's constitutional rights).

Likewise, Plaintiff's claim that he was not given cleaning supplies, a towel, washcloth, or bed linens is not specific enough to state a constitutional deprivation. He says nothing about the length of time he had to wait before these items were provided, nor does he describe any hardship or damages he suffered due to the lack of these supplies. Furthermore, he does not identify any specific defendant who might have been responsible for any of the alleged wrongs, nor include any allegations that the failure to allow Plaintiff a shower or to provide hygiene supplies was due to deliberate indifference. Mere conclusory statements are not sufficient to

state a claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Plaintiff claims that he has been deprived of sleep, but does not explain what (or who) caused the deprivation or how long he was subjected to it. Excessive noise on a nightly basis that interrupts or prevents sleep is a constitutional violation if it poses a serious risk of injury to an inmate. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1433 (7th Cir. 1996); *Lunsford v. Bennett,* 17 F.3d 1574, 1580 (7th Cir. 1994). However, Plaintiff's complaint does not provide the Court with enough information to allow this portion of his claim to proceed.

Plaintiff's other allegations, that he has been exposed to rust particles, sewage fumes, asbestos, lead paint, excessive cold, and that the cell has insufficient air circulation, similarly fail to state an Eighth Amendment violation. Again, the complaint lacks any description of how long Plaintiff was subjected to these conditions or whether he suffered any injury. Plaintiff's brief statements do not come close to describing the kind of objectively serious conditions that have been found to state a constitutional claim for cruel and unusual punishment. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls); *see also, DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human waste as well as the odor of accumulated urine, stated Eighth Amendment claim).

None of Plaintiff's allegations regarding the conditions of his confinement are sufficient to meet the objective component of a deliberate indifference claim. Nor does Plaintiff state any facts to indicate that any defendant had the requisite subjectively culpable state of mind. Accordingly, Count 4 shall be dismissed with prejudice.

**Pending Motions**

Because Plaintiff has failed to state any claim upon which relief may be granted, Plaintiff's motions for a preliminary injunction (Doc. 5) and temporary restraining order (Doc. 9) are **DENIED** as moot. Likewise, Plaintiff's motion for a change of venue (Doc. 12) is also **DENIED** as moot.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's complaint fails to state any claim upon which relief may be granted, and thus is **DISMISSED.** The dismissal of Plaintiff's claim in Count 2 for restoration of his good conduct credit shall be without prejudice to Plaintiff bringing the good conduct credit claim in a properly filed habeas corpus action, *after he has exhausted his state court remedies*. The dismissal of all Plaintiff's other claims shall be **with prejudice**.

Plaintiff is advised that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Because two of Plaintiff's previously-filed lawsuits[1] have been dismissed pursuant to § 1915A for failure to state a claim upon which relief may be granted, the dismissal of this case gives Plaintiff his third "strike." Accordingly, Plaintiff shall be required to pre-pay the full filing fee for any future lawsuit he may file. Plaintiff will no

---

[1] *Taylor v. Mangram*, 03-cv-50131 (N.D. Ill., filed March 31, 2003) (strike 1, dismissed April 22, 2003, for failure to state a claim upon which relief may be granted); *Taylor v. Randle*, 10-cv-744-JPG (S.D. Ill., filed Sept. 24, 2010) (strike 2, dismissed February 23, 2011, pursuant to § 1915A).

longer be eligible to pay a filing fee in installments using the *in forma pauperis* provisions of § 1915(a) and (b), unless he can establish that he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED:** May 10, 2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge